FILED'10 AUG 3 14:10USDC-ORM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

ADAM C. FOX,                                          Civil No.  09-3067-CL

       Plaintiff,                                          ORDER

v.

JOSEPHINE COUNTY; GIL GILBERTSON;
DON FASCHING; and SUE WATKINS,

       Defendants.

CLARKE, Magistrate Judge:

      Plaintiff brings this action against defendants alleging a 42 U.S.C. § 1983 claim

for violation of the First Amendment and supplemental state claims of whistleblowing

(ORS 659A.203), wrongful discharge, and breach of contract.  Plaintiff seeks economic

damages, declaratory and injunctive relief, non-economic damages, punitive damages,

and attorney's fees and costs.  This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331,

1343, and 1367.  The parties have executed written consents to entry of judgment by a

magistrate judge (#10).  28 U.S.C. § 636 (c).  Before the Court is defendants' motion for

summary judgment (#24).  For the reasons stated, the Court grants defendants' motion.

//

## I.  BACKGROUND

Construing the facts in the light most favorable to the non-movant, the record reveals the following[1]:

Plaintiff Adam Fox was first hired by Josephine County in 2003. He was employed at the jail as a corrections deputy.  In November 2003, he resigned and went to work as a dispatcher at the City of Grants Pass.  During both those periods of employment management had no issues with his performance.  He became certified as a police and emergency dispatcher.  (Fox Decl.  ¶¶ 7, 18, 19.)

In February 2007, plaintiff was rehired by defendant as a Josephine County Sheriff's Deputy.  (Fox Decl.  ¶¶ 4, 23, 26; Matthews Decl. Ex. 1 Watkins Dep. 106:18-107: 23).   Plaintiff was first assigned to the jail.  (Matthews Decl. Ex. 3 Fasching Dep. 14:23-15:7; 15:20- 16:6; 28:17-29:6; Ex. 4 Michael Dep. 13:10-14:5.)  He was a probationary employee subject to employment termination without just cause during the first 18 months of his employment. (Matthews Decl. Ex. 2 Moye Dep. 11:5-24; Watkins Decl. ¶ 5.)

On April 15, 2008,  Plaintiff was assigned to assist Sgt. Jeff Michael in setting up the Josephine County Dispatch Center. Defendants' dispatch duties were no longer to be carried out by the City of Grants Pass.  Plaintiff was then assigned to a temporary position as the lead dispatcher, assisting in the construction and implementation of the dispatch

---

[1] Only those facts pertinent to the motion and necessary for an understanding of the Court's ruling are included.  To the extent facts are included as to which objection has been made, the objection is overruled; otherwise, the objections made in plaintiff's motion to strike (#36) and defendants' evidentiary objections are moot.

center the Sheriff's Office was developing. (Fox Decl. ¶¶ 4, 23, 26; Matthews Decl. Ex.

3 Fasching Dep. 14:23-15:7, 15:20-16:6, 28:17-29:6; Ex. 4 Michael Dep. 13:10-14:5.)

On or about August 3 - 4, 2008, the administrative team decided to reassign

plaintiff to the county jail. (Matthews Decl. Ex. 3 Fasching Dep. 30:14-32:16; Ex. 1

Watkins Dep. 89:17-91:2; Gilbertson Decl. ¶ 6.)

Plaintiff's supervisor, Sergeant Jeffrey Michael, telephoned plaintiff on August 4,

2008, to inform him of the decision that Ms. Hamelin would be the lead dispatcher; he

informed plaintiff that Ms. Hamelin was now the "new supervisor in dispatch" and "has

been hired full time." Sgt. Michael presented the decision to plaintiff as an option to stay

in dispatch or return to the jail. (Matthews Decl. Ex. 4 Michael Dep. 46:4-19; Fox Decl.

¶ 34.) Sgt. Michael informed plaintiff to decide how he wanted to proceed and, at that

time, plaintiff expressed his wish to Sgt. Michael that he be reassigned to the jail.

On August 4, 2008, following the telephone call from Sgt. Michael, plaintiff

emailed a letter to defendant Undersheriff Fasching. He requested to be assigned back to

the jail. (Matthews Decl. Ex. 5 Fox Dep. 18:15-18, 19:14-17 & Dep. Ex 4; see Fox Decl.

¶¶ 3, 4.)

The Sheriff's administrative team reviewed plaintiff's August 4th email at their

meeting the next morning. (Matthews Decl. Ex. 3 Fasching Dep. 33:19-23.) They

confirmed that plaintiff was still a probationary employee. (Matthews Decl. Ex. 1

Watkins Dep. 56:4-16, 62:16-18.) They decided to terminate plaintiff's employment.

(Matthews Decl. Ex. 3 Fasching Dep. 34:2-9, 35:18-36:1; Ex. 4 Michael Dep. 56:14-22;

Ex. 1 Watkins Dep. 64:24-66:12, 68:3-10; Gilbertson Decl. ¶ 8.) Defendant Watkins met

with plaintiff the afternoon of August 5, 2008, and informed plaintiff his employment

was terminated, effective immediately.  (Matthews Decl. Ex. 1 Watkins Dep. 59:13-16,

68:3-10; Fox Decl. ¶ 15.)

Until the meeting on August 5, 2008, to discuss plaintiff's August 4th email, none

of the individual defendants had recommended or participated in a discussion

recommending termination of plaintiff's employment.  (Matthews Decl. Ex. 3 Fasching

Dep. 26:2-10, 33:11-14; Fasching Decl. ¶ 7; Gilbertson Decl. ¶ 9; Watkins Decl. ¶ 6.)

## II. LEGAL STANDARDS

Pursuant to Rule 56(c), summary judgment "should be rendered, if the pleadings,

the discovery and disclosure materials on file, and any affidavits show that there is no

genuine issue as to any material fact and that the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(c); see Freeman v. Oakland Unified Sch. Dist., 291

F.3d 632, 636 (9th Cir. 2002).  The court cannot weigh the evidence or determine the

truth but may only determine whether there is a genuine issue of fact.  Playboy Enters.,

Inc. v. Welles, 279 F.3d 796, 800 (9th Cir. 2002).  An issue of fact is genuine "'if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"

Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

The moving party must carry the initial burden of proof.  Celotex Corp. v. Catrett,

477 U.S. 317, 322-24 (1986).  The moving party meets this burden by identifying for the

court portions of the record on file which demonstrate the absence of any genuine issue of

material fact.  Id.; Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).  In

assessing whether a party has met its burden, the court views the evidence in the light most favorable to the non-moving party. Allen v. City of Los Angeles, 66 F.3d 1052, 1056 (9th Cir. 1995). All reasonable inferences are drawn in favor of the non-movant. Gibson v. County of Washoe, 290 F.3d 1175, 1180 (9th Cir. 2002).

If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts which show there is a genuine issue for trial. Fed. R. Civ. P. 56(e)(2); Auvil v. CBS "60 Minutes", 67 F.3d 816, 819 (9th Cir. 1995); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 & n.4 (1986). Summary judgment should be granted for the movant, if appropriate, in the absence of any significant probative evidence tending to support the opposing party's theory of the case. Fed. R. Civ. P. 56(e); THI-Hawaii, Inc. v. First Commerce Fin. Corp., 627 F.2d 991, 993-94 (9th Cir. 1980); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 290 (1968). Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts which show there is a genuine issue for trial. Devereaux, 263 F.3d at 1076.

## III. DISCUSSION

### First Claim - 42 U.S.C. § 1983 First Amendment

Plaintiff's First Amendment claim is brought against defendant Josephine County and the individual defendants in their official and individual capacities.

The parties agree that, to determine whether a government employee's free speech

Order - Page 5

rights have been violated, the court must engage in a five-step sequential inquiry:

> (1) whether the plaintiff spoke on a matter of public concern; (2) whether
> the plaintiff spoke as a private citizen or public employee; (3) whether the
> plaintiff's protected speech was a substantial or motivating factor in the
> adverse employment action; (4) whether the state had an adequate
> justification for treating the employee differently from other members of
> the general public; and (5) whether the state would have taken the adverse
> employment action even absent the protected speech.

Eng v. Cooley, 552 F.3d 1062, 1070 (9th Cir. 2009), cert. denied, ___ U.S. ___, 130 S.

Ct. 1047 (2010).

### Plaintiff's August 4th email

Defendants contend that the first element is not met because the August 4th email

in context concerns plaintiff's personal dispute with management's decision to place his

co-worker into the temporary lead dispatch position plaintiff desired.  Plaintiff responds

that his email is protected because it was critical of the motives of the administration.

Speech involves a matter of public concern "when it can fairly be considered to

relate to 'any matter of political, social, or other concern to the community.'"  Id. at 1070

(quoting Johnson v. Multnomah County, 48 F.3d 420, 422 (9th Cir. 1995)).  The Ninth

Circuit has found that, "Speech that is necessary or appropriate to enable citizens to make

informed decisions about the operation of their government is of public concern, while

speech by public employees addressing individual personnel disputes and grievances is

not."  Pool v. VanRheen, 297 F.3d 899, 906 (9th Cir. 2002).  Threats to public safety,

inefficiency in management of personnel, unethical behavior, and violations of safety

regulations have been found to be matters of public concern.  Hyland v. Wonder, 972

F.2d 1129, 1137 (9th Cir. 1992).  In making the determination whether speech involves a

Order - Page 6

matter of public concern, the court must look at the content, form, and context of the

given statement, as revealed by the entire record.  Brownfield v. City of Yakima, ___

F.3d ___, 2010 WL 2902503, at *6 (9th Cir. July 27, 2010).  If some part of the

communication addresses a matter of public concern, it will be protected under the First

Amendment.  Hyland, 972 F.2d at 1137.  Whether speech is constitutionally protected as

a matter of public concern is a question of law.  Eng, 552 F.3d at 1070.

The only language plaintiff identifies in the August 4th email and which might be a

matter of public concern is plaintiff's statements that the hiring of Ms. Hamelin was

politically motivated.  In the email, plaintiff states in pertinent part:

> I feel that this is nothing more than a political "good ol boy" decision and
> has been made in poor judgment and in haste, and that I have been
> sacrificed up for the office and discarded.
>
> I wish no part in the coming transition, I do not want to work for Debbie or
> in any situation that is so obviously politically motivated and an example
> of the good old boy network that the Sheriff vowed never to have in his
> department, and per my union rights, I formally request to be reassigned to
> the jail. . . .

(Mathews Decl. Ex. 5 at 34.)  Complaints of a "good ole boy network" which fostered

racial and gender discrimination, made in a letter to the editor and read at a public

meeting attended by the press, was found by the Ninth Circuit in Pool, 297 F.3d at 906-

07, to address a matter of public concern.  Here, the references by plaintiff to "good old

boy" are to the one decision of defendants to hire Ms. Hamelin as dispatch supervisor and

to this one decision as an example of the good old boy network.  The content of plaintiff's

speech at issue does not support a finding that the speech is a matter of public concern.

Although the content of the speech is paramount in the inquiry, also relevant is

form and context, in which the court looks at the "'employee's motivation and the audience chosen for the speech.'" Ulrich v. City of San Francisco, 308 F.3d 968, 979 (9th Cir. 2002). Here, the speech was made in an email to defendant Fasching, Undersheriff at the jail, and was not made to the public. See Weeks v. Bayer, 246 F.3d 1231, 1236 (9th Cir. 2001) (speaking publicly suggests a desire to bring wrongdoing to light). In examining context, the court focuses on the point of the speech. Roth v. Veteran's Admin., 856 F.2d 1401, 1405 (9th Cir. 1988) (citing Connick v. Myers, 461 U.S. 138, 148 (1983)); Desrochers v. City of San Bernadino, 572 F.3d 703, 715 (9th Cir. 2009) (and cases cited); Doherty v. Portland Cmty. Coll., No. CIV 99-1375-ST, 2000 WL 1738862, at *3, *16-*18 (D. Or. Nov. 21, 2000). Plaintiff's August 4th email as a whole is an email from a disgruntled employee who is not happy that a coworker was hired for the position he was performing and, apparently, aspired to. In context, the references to "good old boy" are in sentences expressing plaintiff's personal grievance about defendants' decision to hire Ms. Hamelin as supervisor and not him, and are included in a lengthy email in which the focus is plaintiff's perception of his qualities in comparison to those of Ms. Hamelin, and his personal feelings about the hire. The phrases at issue are mere passing references incidental to the message conveyed by plaintiff in the email. See Desrochers, 572 F.3d at 711 (citing Robinson v. York, 566 F.3d 817, 823 (9th Cir. 2009), cert. denied, ___ U.S. ___, 130 S. Ct. 1047 (2010)); Brownfield, 2010 WL 2902503, at *7.

Considering its content, form, and context, as revealed by the record, the speech in plaintiff's email cannot fairly be considered to be a matter of public concern. See

Doherty, 2000 WL 1738862, at *3, *16-*18 (main point of internal memorandum was

need for accommodation and perception of discrimination against plaintiff); Aldridge v.

Yamhill County, No. CV. 05-1257-PK, 2006 WL 1788178, at *9 (D. Or. June 23, 2006)

(speech was personal grievance and not matter of public concern where plaintiff

complained about own treatment) (and cases cited).

### Plaintiff's pre-email statements

Plaintiff also argues that the email was not produced in a vacuum and his email

was part of a series of complaints voiced by him to administration. It is unclear from

plaintiff's pleadings and his briefing whether plaintiff relies on any pre-email statements

as a basis for his First Amendment claim. He does not identify any particular statement

or statements in his response.[2]

Viewing plaintiff's evidence in the light most favorable to him, plaintiff

complained to defendant Watkins and Sgt. Michael about Ms. Hamelin's job performance

which plaintiff felt implicated officer safety (Fox Decl ¶ 27; Fox Dep. 30-33, 56, 61-65,

68-69, see Fox Dep. 56-60, 64); he opposed certain practices relating to the dispatch

center imposed by defendants Gilbert and Fasching by telling them and Sgt. Michael the

practices were "wrong" (Fox Decl. ¶¶ 5-6); and he complained to defendant Watkins and

Sgt. Michael about the "improper" hiring of Ms. Hamelin which he understood to be in

violation of federal equal opportunity employment rules and without regard to County

hiring process (Fox Dep. 148, 150-60). Plaintiff also had a discussion with defendant

---

[2] Defendants claim they were not aware of any of the complaints alleged by plaintiff prior to commencement of this lawsuit. (See Gilbertson Decl. ¶¶ 5, 7; Fasching Decl. ¶ 5; Watkins Decl. ¶ 4.)

Order - Page 9

Gilbertson about the potential hiring of an applicant and defendant refused to let plaintiff

consider the candidate because defendant stated it was morally and ethically wrong to hire

someone who took medical retirement and then hire the person to do similar tasks;

plaintiff states defendant Gilbertson hired Ms. Hamelin about a week later "who fit the

very same profile but had other personal connections with the department" (Fox Decl. ¶¶

8-9).

     To the extent that plaintiff relies on these pre-email statements to support his First

Amendment claim, and assuming they involve a matter of public concern, supra, these

statements were made by plaintiff in his capacity as a public employee rather than as a

private citizen.  "[S]tatements are made in the speaker's capacity as citizen if the speaker

'had no official duty' to make the questioned statements or if the speech was not the

product of '"perform[ing] the tasks [the employee] was paid to perform."'"  Posey v. Lake

Pend Oreille Sch. Dist. No. 84, 546 F.3d 1121, 1127 n.2 (9th Cir. 2008) (quoting Marable

v. Nitchman, 511 F.3d 924, 932-33 (9th Cir. 2007); Freitag v. Ayers, 468 F.3d 528, 544

(9th Cir. 2006)).  Plaintiff bears the burden of showing that the speech was spoken in

plaintiff's capacity as a private citizen.  Eng, 552 F.3d at 1071.  Plaintiff was hired as the

temporary lead dispatcher to help make the dispatch center run (see Fox Decl. ¶ 4; Pl.

Opp'n at 9) and his  statements resulted from performing his job duties as the lead

dispatcher.  Therefore, plaintiff's pre-email statements are not protected speech under the

First Amendment.

     Moreover, plaintiff shows no causal link between any pre-email complaints made

by him and his termination on August 5th, as explained infra.

Order - Page 10

**Defendant Josephine County**

Defendants do not raise any issue in their motion for summary judgment as to defendant Josephine County's policies, customs or practices and, thus, defendants' motion is not brought against defendant Josephine County or the individual defendants in their official capacity, but only against the individual defendants in their individual capacity. See Prebe v. Yamhill County, Civil No. 08-603-AA, 2009 WL 2132716, at *4-*5 (D. Or. July 8, 2009). However, in the circumstances of this case, because the Court has found that no constitutional violation by any of the individual defendants has been shown, defendant Josephine County bears no municipal liability, see City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986), and summary judgment is appropriate as to defendant Josephine County as to plaintiff's First Amendment claim.

**Conclusion**

Plaintiff's speech in his August 4th email does not involve a matter of public concern and his pre-email speech was not made as a private citizen but as a public employee. Accordingly, plaintiff's speech is not protected under the First Amendment. Defendants' motion for summary judgment as to plaintiff's first claim is granted and plaintiff's First Amendment claim is dismissed as to the individual defendants and defendant Josephine County.

**Second claim - ORS 659A.203 Whistleblowing**

Plaintiff claims that defendants violated Oregon's whistleblowing statute, ORS 659A.203 which provides in pertinent part that:

Order - Page 11

(1) . . . [I]t is an unlawful employment practice for any public employer to:

. . . .

(b) Prohibit any employee from disclosing, or take or threaten to take disciplinary action against an employee for the disclosure of any information that the employee reasonably believes is evidence of:

(A) A violation of any federal or state law, rule or regulation by the state, agency or political subdivision;

(B) Mismanagement, gross waste of funds or abuse of authority or substantial and specific danger to public health and safety resulting from action of the state, agency or political subdivision; . . .

. . . .

This claim can only be brought against defendant Josephine County as a public employer.

ORS 659A.203(1).

The parties agree that plaintiff must show that: "(1) she engaged in protected activity; (2) she suffered an adverse employment decision; and (3) she suffered the adverse employment decision because she engaged in the protected activity, that is, there is a causal link between her activity and the employment decision." Clarke v. Multnomah County, Civil No. 06-229-HU, 2007 WL 915175, at *14 (D. Or. Mar. 23, 2007), aff'd, 303 Fed. Appx. 512 (9th Cir. 2008).

**Plaintiff's August 4th email**

Defendants contend that the only potential causal link with plaintiff's termination was the information from the August 4th email, and the email is not protected activity because, first, it was not a "disclosure" under the statute and, second, it does not contain any statement of wrongdoing within the meaning of the statute. Plaintiff responds that the activities complained about are protected under the statute. Plaintiff does not specifically address whether information in the August 4th email is protected under the

statute.

A "disclosure" under the whistleblowing statute is "a report of 'wrongdoing'" and includes a report of wrongdoing within an agency or department. Shultz v. Multnomah County, No. 08-CV-886-BR, 2009 WL 1476689, at *13 (D. Or. May 27, 2009) (quoting Bjurstrom v. Or. Lottery, 202 Or. App. 162, 169-71 (2005)); Clarke, 2007 WL 915175, at *14; see OAR 839-010-0010(4). The District of Oregon has found that "the disclosure must pertain to the underlying conduct in order to be protected activity rather than to the asserted fact of its unlawfulness or impropriety." Shultz, 2009 WL 1476689, at *14 (citing Clarke, 2007 WL 915175, at *15). Further, this district, relying on standards governing the federal Whistleblowers Act of 1989, has found that "a disclosure is protected only if it is 'made to a person who was previously unaware of the information, meaning someone "in a supervisory position, other than the wrongdoer himself."'" Shultz, 2009 WL 1476689, at *13; Clarke, 2007 WL 915175, at *14-*15.

The Court agrees with defendants that the email, considered it as a whole, is not a disclosure within the meaning of the whistleblowing statute. Its subject concerns the hiring of Ms. Hamelin as temporary lead dispatcher rather than plaintiff and plaintiff's dissatisfaction with the decision. In this regard the email reports no information of wrongdoing within the statute.

Considering plaintiff's statements in the email that the decision to hire Ms. Hamelin was politically motivated, defendants contend that the complaint of a single employment decision does not constitute mismanagement as that term is used in the statute. The Oregon Court of Appeals in Bjurstrom, 202 Or. App. at 171-73, considered

Order - Page 13

the meaning of the term "mismanagement" as used in the statute. The court found that the statute itself "suggests that the term 'mismanagement' refers to malfeasance that, like the other types of malfeasance in subparagraph (1)(b)(B) [supra], undermines the agency's ability to perform its mission." The court noted that the second and third terms, "'*gross waste of funds or abuse of authority*' and '*substantial and specific* danger to public health and safety,' contain modifiers indicating that the reported activity must rise in magnitude to a level of public concern in order for complaints about it to be protected." Id. at 172 (emphasis in original). The Bjurstrom court concluded that the term "mismanagement" "refer[s] to serious agency misconduct having the effect of actually or potentially undermining the agency's ability to fulfill its public mission." Id. at 173; OAR 839-010-0010(7).

Here, the Court cannot conclude that plaintiff's complaint of political favoritism relating to one employment decision rises to the magnitude contemplated by the statute so as to be protected as a disclosure of mismanagement.

Plaintiff's statements of political favoritism could implicate the protected disclosure of "abuse of authority," ORS 659A.203(1)(b)(B). "Abuse of authority" is defined by the regulations as, "to deliberately exceed or make improper use of delegated or inherent authority or to employ it in an illegal manner." OAR 839-010-0010(1). Again, the Court cannot conclude on this record that plaintiff's complaint of political favoritism rises to the magnitude of a protected disclosure of abuse of authority. Moreover, it appears that the definition of "disclosure" limits the term to a disclosure of abuse of authority "in connection with the administration of a public program or the

execution of a public contract." OAR 839-010-0010(4)(d).

Plaintiff's email statements are not protected by the Oregon whistleblowing statute.

### Plaintiff's pre-email complaints

Plaintiff identifies in his response only pre-email communications which he contends trigger the whistleblowing statute, referencing: the "ADA violation" (Pl. Resp. at 11), the failure to give shift change notice under the union contract, the BOLI rest-break violation, and the hiring and qualification issues relating to Ms. Hamelin. Defendant replies that plaintiff creates new allegations which are unrelated to his complaint allegations.

The evidence offered by plaintiff shows that all of the communications identified by plaintiff as whistleblowing complaints, see supra, took place in June-July prior to his August 4th email. Defendants offer evidence, which is undisputed by plaintiff, that defendants had decided in early August, after the complaints referenced by plaintiff, to reassign plaintiff from the dispatch center to the jail. (Gilbertson Decl. ¶ 6; Fasching Dep. 30-32; Watkins Dep. 89-91.) Defendants Gilbertson, Fasching, and Watkins each declare that they had not recommended or participated in a discussion recommending that plaintiff's employment be terminated other than at the administrative meeting held on August 5th after receipt of plaintiff's email. (Gilbertson Decl. ¶ 9; Fasching Decl. ¶ 7, Dep. at 26; Watkins Decl. ¶ 6.) The undisputed evidence is that on August 5th, the administrative team, which included defendants Fasching and Watkins, recommended that plaintiff's employment be terminated, and that defendant Gilbertson agreed with the

Order - Page 15

recommendation and instructed that plaintiff be terminated. (Gilbertson Decl. ¶ 8;

Fasching Decl. ¶ 6; Watkins Decl. ¶ 5 , Dep. at 65.) There is also evidence in the record

that plaintiff had received a raise on or about August 1, shortly before the reassignment

decision. (Fox Decl. ¶ 16.) Even if the complaints referenced by plaintiff qualify as

"disclosures" under the whistleblowing statute, plaintiff does not offer any evidence of a

causal link between any of his pre-email complaints and his termination on August 5th.

Therefore, plaintiff's claim fails as to any pre-email complaints made by him.

### Conclusion

Neither plaintiff's August 4th email nor his pre-email complaints are protected

disclosures under the Oregon whistleblowing statute. Defendants' motion for summary

judgment as to plaintiff's whistleblowing claim is granted and plaintiff's second claim for

violation of the Oregon whistleblowing statute is dismissed.


### Third claim - Wrongful Discharge

Plaintiff claims that he was wrongfully terminated for reporting of public and

officer safety and illegal and unfair hiring practices. This claim can only be brought

against defendant Josephine County as plaintiff's employer. Schram v. Albertson's, Inc.,

146 Or. App. 415, 426 (1997).

Generally, an employer may discharge an employee at any time for any reason,

absent a contract or statute to the contrary. Nees v. Hocks, 272 Or. 210, 218 (1975). The

Oregon courts have recognized exceptions to the at will employment doctrine where an

employer must answer in damages for discharging an employee for a socially undesirable

Order - Page 16

motive. Patton v. J. C. Penney Co., 301 Or. 117, 120-21 (1986), abrogated on another

ground by McGanty v. Staudenraus, 321 Or. 532 (1995); Banaitis v. Mitsubishi Bank,

Ltd., 129 Or. App. 371, 376 (1994).  A wrongful discharge claim will lie where an

employee is discharged for fulfilling a societal obligation which thwarts an important

public function, such as serving on a jury; or where the employee is discharged for

exercising an employment related right of public importance, such as resisting sexual

harassment.  Id.; Sheets v. Knight, 308 Or. 220, 231 (1989), abrogated on another ground

by McGanty v. Staudenraus, 321 Or. 532 (1995); Delaney v. Taco Time Int'l, Inc., 297

Or. 10 (1984); Babick v. Or. Arena Corp., 333 Or. 401, 407 (2002).

Plaintiff relies on the public duty / societal obligation exception, asserting in his

response certain "examples" of topics he complained about and the associated statutes or

regulations he claims establish a relevant public duty.  In determining whether a plaintiff's

discharge was for fulfilling an important public duty, "'[t]his court cannot create a public

duty but must find one in constitutional or statutory provisions or case law.'"  Love v.

Polk County Fire Dist., 209 Or. App. 474, 483 (2006) (quoting Eusterman v. Northwest

Permanente, P.C., 204 Or. App. 224, 229-30 (2006)); Lamson v. Crater Lake Motors,

Inc., 346 Or. 628, 637 (2009) (en banc).  Moreover, "[t]he provisions relied on 'cannot

merely express a general public policy; rather, they must encourage specific acts or

"otherwise demonstrat[e] that such acts enjoy high social value."'"  Love, 209 Or. App. at

483 (quoting Eusterman, 204 Or. App. at 230; Babick, 333 Or. at 409), 486.  "[T]he class

of conduct that is deemed to  'enjoy high social value' is very narrowly circumscribed."

Love, 209 Or. App. at 486-87.  Further, in whistleblowing situations where a plaintiff is a

Order - Page 17

public employee, plaintiff must show that the complaints were objectively reasonable. Love, 209 Or. App. at 487-92.

In his response brief, plaintiff contends that the public has the very highest interest in having a well-rested, qualified and trained workforce and that his fight for this resulted in his termination. Plaintiff cites the following as topics he complained about: wage and hour provisions relating to hours and rest breaks, OAR 839-020-0050(6); 9-1-1 telephone service requirement of staffing at all times, ORS 403.115(5), which plaintiff contends were not being met; and certification requirements, OAR 259-008-0025(1), or maintenance of certification requirements, OAR 259-008-0064, which plaintiff contends Ms. Hamelin did not fulfill.

### Plaintiff's pre-email complaints

All of the complaints cited by plaintiff relate to complaints he made prior to his August 4th email. Defendant contends that plaintiff ignores the undisputed facts that none of the individual defendants had considered terminating plaintiff's employment until the August 5th administrative meeting. The Court has found that, in the face of defendants' undisputed evidence that right before plaintiff's August 4th email they had decided to reassign plaintiff to the jail and had not considered termination until the August 5th meeting and the fact that plaintiff had received a raise in early August, plaintiff has not shown any causal link between any pre-email complaints and termination of his employment. Accordingly, to the extent that plaintiff's wrongful discharge claim is based upon complaints made prior to his August 4th email, plaintiff's claim fails.

//

Order - Page 18

**August 4th email**

Defendant contends that plaintiff's complaint of political favoritism is not the type of activity that will support a wrongful discharge claim. Plaintiff does not address his August 4th email in the context of his wrongful discharge claim and the Court is not aware of any constitutional or statutory provision or case law relating to politically motivated employment decisions which would create a public duty or societal obligation to bring plaintiff within the exception to the at will employment doctrine.

**Conclusion**

Plaintiff has not shown that any public duty or societal obligation exception to the at will doctrine applies to support his wrongful discharge claim. Defendants' motion for summary judgment as to plaintiff's third claim is granted and plaintiff's wrongful discharge claim is dismissed.

**Fourth claim - Breach of contract**

Plaintiff concedes summary judgment as to his fourth claim.

## IV. ORDER

Based on the foregoing, it is ordered that defendants' motion for summary judgment (#24) is granted. Judgment shall be entered in favor of defendants and against plaintiff.

//

//

Order - Page 19

DATED this ⟍3⟋ day of August, 2010.

_____
UNITED STATES MAGISTRATE JUDGE